IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

Willie S. Herring,                                    Case No. 4:16 CV 2626

            Petitioner,                          REVISED ORDER ADOPTING
     -vs-                                              REPORT AND RECOMMENDATION

Warden Alan J. Lazaroff,                              JUDGE JACK ZOUHARY

            Respondent.

## INTRODUCTION

Petitioner Willie Herring, a prisoner at Mansfield Correctional Institution, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1). He is serving a sentence of 103 years to life following a 1998 conviction in Ohio state court for complicity to commit aggravated murder and other charges (Doc. 1-1 at 3). The Petition asserts six primary grounds for relief, with several sub-grounds (*see id.* at 11–49).

The Petition was referred to Magistrate Judge James Knepp for a Report and Recommendation (R&R) under Local Civil Rule 72.2. Respondent Warden Alan Lazaroff filed a Return of Writ (Doc. 6); Herring responded with a Traverse (Doc. 9). The R&R (Doc. 13) recommends denying the Petition. Herring objects (Doc. 17) and Lazaroff responds (Doc. 20).

**BACKGROUND**

The R&R accurately states the factual and procedural background (Doc. 13 at 1–11), which this Court incorporates by reference and briefly summarizes. Herring objects to two portions of the R&R recitation of the factual background; that objection is overruled below.

Herring was one of five men who robbed a Youngstown bar in 1996 (Doc. 13 at 2). The bartender -- Ronald Marinelli -- and six to eight patrons were in the bar at the time (*id.*). Herring entered the bar wearing a mask and carrying a gun (*id.*). He approached Marinelli and shot him several times at close range (*id.* at 3). Others in the bar were also shot, and three victims died from their injuries (*id.*). At trial, the jury acquitted Herring of aggravated murder but found him guilty of complicity to commit aggravated murder and other charges (*id.* at 4). Herring appealed and filed for post-conviction relief (*id.* at 5–11).

In October 2016, Herring filed his federal habeas Petition (*id.* at 11). The Petition asserts the following grounds for relief (*id.* at 11–12):

1. Improper jury instructions on an essential element of complicity to commit aggravated murder

2. Juror misconduct

3. Ineffective assistance of trial counsel

   A. Failure to object

      1) Failure to object to jury instructions on purpose and causation (related to Ground 1)

      2) Failure to ensure that Herring was present when the trial court communicated with the jury

      3) Failure to object to instances of prosecutorial misconduct (related to Ground 4)

2

        4)     Failure to object to the trial court's use of Ohio's statutory definition of reasonable doubt (related to Ground 6)

    B.     Introduction of prejudicial evidence in the defense case-in-chief and failure to object to State's use of this evidence

    C.     Failure to retain and use an expert in eyewitness investigation

    D.     Failure to impeach State's witness Ronald Marinelli

    E.     Failure to challenge Marinelli's testimony regarding the number of times he was shot

    F.     Failure to challenge Marinelli's testimony regarding the statement he claims Herring made

    G.     Failure to challenge Marinelli's description of the man in the white mask and his identification of Herring as that man

4. Prosecutorial misconduct

    A.     Misconduct during closing argument

    B.     Failure to correct Marinelli's testimony

5. Violation of *Batson v. Kentucky*, 476 U.S. 79 (1986)

6. Improper jury instruction on reasonable doubt

The R&R recommends denial of grounds 3(E), 3(F), 3(G), 4(B), and 6 because they are procedurally defaulted and there is no cause and prejudice to excuse the default (Doc. 13 at 16–26). The R&R recommends denial of the other grounds on the merits (*id.* at 26–53).

## STANDARD OF REVIEW

This Court adopts all uncontested findings and conclusions from the R&R and reviews *de novo* those portions of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); *Hill v. Duriron Co.*, 656 F.2d 1208, 1213–14 (6th Cir. 1981). To trigger *de novo* review, objections must be specific, not "vague, general, or conclusory." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001).

This specific-objection requirement is meant to direct this Court to "specific issues for review." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). General objections, by contrast, ask this Court to review the entire matter *de novo*, "making the initial reference to the magistrate useless." *Id.*

"A general objection, or one that merely restates the arguments previously presented and addressed by the Magistrate Judge, does not sufficiently identify alleged errors in the [R&R]" to trigger *de novo* review. *Fondren v. American Home Shield Corp.*, 2018 WL 3414322, at *2 (W.D. Tenn. 2018). *See also Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."). General objections trigger only clear-error review. *Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 277 F. Supp. 3d 932, 965 (E.D. Tenn. 2017), *aff'd*, 899 F.3d 428 (6th Cir. 2018).

## DISCUSSION

Herring makes three objections, with several sub-objections (Doc. 17).

### **Objection #1: Recitation of the Facts**

Herring first objects to the R&R recitation of the factual background (Doc. 17 at 1–2). The R&R recites verbatim the facts as given by the Ohio Supreme Court (Doc. 13 at 2–4) (quoting *State v. Herring*, 94 Ohio St. 3d 246, 246–48 (2002) ("*Herring I*")). A determination of a factual issue made by a state court is presumed correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Herring objects to two aspects of the recited facts in the R&R: (1) the statement that Robert Marinelli was shot four times; and (2) Marinelli's statement describing physical characteristics of his masked assailant (Doc. 17 at 1) (*see also* Doc. 13 at 3).

On the first point, Herring claims that Marinelli was shot only once, citing Marinelli's medical records for support (Doc. 17 at 1). But Marinelli testified he was shot several times (Doc. 9 at 47), and the medical records Herring cites indicate he suffered from multiple gunshot wounds (*see* Doc. 1-2 at 113, 117, 122). Herring offers no clear and convincing evidence that the state court's factual determination was incorrect.

On the second point, Herring complains that Marinelli and another eyewitness, Deborah Aziz, gave contradictory descriptions of the person wearing the mask (Doc. 17 at 1). While Marinelli described his assailant as having an "odd skin pigment" and eyes with an almost-hazel color (*id.*), Aziz described him as having dark skin and dark eyes (*id.* at 2). But the jury is responsible for resolving conflicts in testimony. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). Plainly, the jury believed Herring was the individual wearing the mask who shot Marinelli. Herring does not present clear and convincing evidence to rebut the factual finding that Herring was the one wearing the mask.

His first objection is overruled.

**Objection #2: Cause and Prejudice**

The R&R recommends that Grounds 3(E), 3(F), 3(G), 4(B), and 6 be denied as procedurally defaulted (Doc. 13 at 14–26). For each ground, the R&R determined that there was no cause and prejudice to excuse the default. Herring objects to the R&R on each ground.

**Sub-objections 1–3: Grounds 3(E), (F), and (G)**

Herring alleges the Magistrate Judge applied the wrong legal standard when determining whether there is cause to excuse the defaults for Grounds 3(E), (F), and (G) (all ineffective-assistance-of-trial-counsel claims). Herring contends that ineffective assistance of post-conviction counsel is cause to excuse the defaults.

### *Trevino* Applicability

Herring objects that the R&R did not determine whether *Trevino v. Thaler*, 569 U.S. 413 (2013), applies in Ohio or specifically to his case (Doc. 17 at 2). *Trevino* extended a rule first established in *Martinez v. Ryan*, 566 U.S. 1, 17 (2012), that ineffective assistance of post-conviction counsel can serve as cause to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim where certain conditions are met. As restated in *Trevino*, those conditions are:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

569 U.S. at 423 (emphasis and alteration in original) (quoting *Martinez*, 566 U.S. at 17). *Trevino*, in turn, modified the fourth condition "to apply to situations where state law makes it 'highly unlikely' that a defendant will have a 'meaningful opportunity' to raise ineffective-assistance claims on direct appeal." *Williams v. Mitchell*, 792 F.3d 606, 615 (6th Cir. 2015) (quoting *Trevino*, 569 U.S. at 429).

Herring argues that *Trevino*'s extension of *Martinez* applies in Ohio because, under Ohio's procedural framework, his first meaningful opportunity to raise these ineffective-assistance-of-trial-counsel claims was at his initial post-conviction-review proceeding (Doc. 9 at 11–14). The R&R

6

determined that "even if *Martinez* and *Trevino* were held to apply in Ohio . . . [Herring] has failed to show a 'substantial' claim of ineffective assistance of trial counsel" (Doc. 13 at 21).

The Sixth Circuit has yet to decide whether *Trevino* applies in Ohio, but it has suggested that *Trevino*'s application in Ohio "is neither obvious nor inevitable." *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 752 (6th Cir. 2013). Further, the Sixth Circuit has taken the same path as the R&R and sidestepped *Trevino*, focusing instead on the other *Martinez* conditions. *See, e.g.*, *Hill v. Mitchell*, 842 F.3d 910, 938 (6th Cir. 2016) (holding that "even if *Trevino* applies, Hill cannot satisfy the requirements of the *Martinez* exception"). Thus, the R&R correctly declined to decide whether *Trevino* applies and framed the question around whether Herring has "shown a 'substantial claim' of ineffective assistance of trial counsel" (Doc. 13 at 20).

### Substantial-Claim Requirement

The R&R then correctly stated that "for a claim to be 'substantial' under *Martinez*, the claim must have 'some merit'" under both the deficient-performance and prejudice prongs of *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (Doc. 13 at 20). *See Morrow v. Tennessee*, 588 F. App'x 415, 422 (6th Cir. 2014) ("Substantial claims are those that petitioner demonstrates have 'some merit' under *Strickland*'s two-prong standard."). *See also McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 752 (6th Cir. 2013). The R&R concluded that Herring cannot show substantial claims of prejudice resulting from ineffective assistance of trial counsel and thus cannot overcome procedural default on these claims (Doc. 13 at 22–23).

Herring objects, asserting that the R&R held him to an unnecessarily high standard by focusing on whether he actually met *Strickland*'s prejudice prong, as opposed to whether he merely showed "some merit" to his ineffective-assistance-of-trial-counsel claims (Doc. 17 at 2). He argues

7

that, to show "some merit," he needed to show only "that reasonable jurists could debate whether" his underlying claims would succeed under *Strickland*. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted). *See also Martinez*, 566 U.S. at 14 (citing *Miller-El*, 537 U.S. 322 (2003)).

*Martinez* provides little guidance as to what constitutes "some merit" and by what standard this Court should measure deficient performance and prejudice in an underlying ineffective-assistance-of-trial-counsel claim. *Martinez* cryptically provides only a "cf." citation to *Miller-El*, a case that describes the standard for issuing certificates of appealability. 566 U.S. at 14. *Martinez* did not explicitly state that *Miller-El*'s reasonable-jurists-could-debate standard is the one to apply in determining whether a claim is substantial. Later appellate opinions, too, offer limited guidance on this question. *See Brown v. Brown*, 847 F.3d 502, 515 (7th Cir. 2017) (citing cases).

Lazaroff argues the appropriate standard to apply is whether the underlying ineffective-assistance-of-trial-counsel claim actually meets both *Strickland* prongs (Doc. 20 at 4–5). After all, the cause-and-prejudice standard requires that a petitioner "demonstrate cause for the default and *actual prejudice* as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (emphasis added). But the *Martinez* Court knew the *Coleman* standard and still decided that the petitioner needs to demonstrate only "some merit" to the underlying claim. 566 U.S. at 14. The Court adopted this standard specifically for defaulted ineffective-assistance-of-trial-counsel claims because "[t]he right to the effective assistance of counsel at trial is a bedrock principle in our justice system," and "[a] prisoner's inability to present a claim of trial error is of particular concern when the claim is one of ineffective assistance of counsel." *Id.* at 12.

8

Although another case may require defining "some merit," this one does not. Here, even under the low threshold of the reasonable-jurists-could-debate standard, Herring does not demonstrate that his underlying ineffective-assistance-of-trial-counsel claims are substantial.

For Ground 3(E), Herring argues that his trial counsel was ineffective for failing to challenge Marinelli's testimony regarding the number of times he was shot. But, as stated above, Marinelli's medical records show he was shot multiple times (*see* Doc. 1-2 at 113, 117, 122). Whether more testimony could have been developed about exactly how many times or in exactly what way he was shot is beside the point. Herring cannot show a reasonable probability that, but for his trial counsel's failure to develop that additional testimony, "the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. Reasonable jurists could not debate this conclusion.

For Ground 3(F), Herring argues that his trial counsel was ineffective for failing to challenge Marinelli's testimony about the statement he claims Herring made. Marinelli testified that Herring stood over him and said, "You ain't dead yet, motherfucker," before shooting him in the thighs (Doc. 9 at 48). Herring claims this statement inflamed the jury (*id.* at 50–51). He argues trial counsel could have rebutted this statement with Aziz's testimony because she was close enough to hear the shooter speak but never corroborates that statement (*id.* at 51).

But, as the R&R discusses, Aziz never testified in prior proceedings that she did not hear the statement, she simply never testified to it (Doc. 13 at 22). And at Herring's trial, she testified to what she heard between the gunman and Marinelli (Doc. 7-18 at 42). There is no reasonable probability that, but for his trial counsel's failure to elicit further testimony from Aziz on this point, "the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. Reasonable jurists could not debate this conclusion.

9

For Ground 3(G), Herring argues his trial counsel failed to challenge Marinelli's description of the man in the white mask and his identification of Herring as that man. Herring points to several instances where Aziz testified to the masked gunman's characteristics, either in police interviews or in other court proceedings prior to Herring's trial (Doc. 9 at 56–59). In these statements, Aziz states the mask was a "full face white mask . . . [with] large eye holes" (*id.* at 56). She states she saw the gunman had dark eyes and dark skin (*id.* at 56–59). Herring argues Aziz's recollection of the gunman's eyes, skin, and mask all rebut Marinelli's testimony, in which he claimed the gunman had hazel-like eyes, an "odd skin pigment," and buck teeth (*id.* at 54).

But Herring's counsel argued in closing that the mask would have hidden any identifying facial features (Doc. 7-20 at 173) ("Because two things that coincide with Debbie [Aziz] and Mr. Marinelli are, there was a white mask, a Jason mask. And that Jason mask would have hidden the things that everyone said you could see."). Counsel took the reasonable approach of arguing how dark it was in the bar to argue that Marinelli, or anyone else, could not have seen facial characteristics of the man in the white mask (*id.* at 171–72). Counsel pointed out that Aziz "wasn't able to tell you what color skin, what color hair, [or] any of the other features" of the man in the white mask (*id.* at 170). Thus, counsel's failure to elicit Aziz's contradictory description of the facial features of the man in the white mask does not present a substantial claim of ineffective assistance of trial counsel. There is no reasonable probability that, but for his trial counsel's failure to further develop Aziz's testimony, "the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. Reasonable jurists could not debate this conclusion.

The R&R correctly found that these claims are not substantial (Doc. 13 at 22–23). The objections to the determinations on Grounds 3(E), (F), and (G) are overruled.

10

**Sub-objection 4: Ground 4(B)**

Ground 4(B) asserts prosecutorial misconduct in failing to correct testimony from Marinelli about how many times he was shot based on medical records that were in the prosecutor's possession (Doc. 13 at 24). The claim is defaulted because Herring did not contemporaneously object. Herring argues that the prosecutorial misconduct itself should serve as cause and prejudice to overcome the default of the prosecutorial-misconduct claim (Doc. 17 at 5–6). As the R&R noted, that argument is circular because it uses the claim itself as cause to excuse a failure to raise the claim (Doc. 13 at 24).

Herring insists that the State's malfeasance kept Herring from raising this claim during post-conviction review (Doc. 17 at 6). But this is not a situation where the prosecutor is hiding evidence from a defense attorney. As Herring admits, his counsel had the relevant medical records at trial, yet did not object (Doc. 9 at 49). This objection is overruled.

**Sub-objection 5: Ground 6**

Ground 6 challenges the jury instruction on reasonable doubt. At Herring's trial, the jury was instructed with Ohio's then-statutory definition of reasonable doubt (Doc. 9 at 78). That statute defined "[p]roof beyond a reasonable doubt" as "proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs." Ohio Rev. Code § 2901.05(D) (1978) (amended 2008). Herring asserts this instruction denied him due process. Herring's trial counsel did not contemporaneously object, but Herring argues ineffective assistance of trial counsel as cause to overcome the default. The R&R determined that, Herring cannot show prejudice to overcome the default because "Ohio's articulation of the reasonable doubt standard does not offend due process" (Doc. 13 at 26) (quoting *White v. Mitchell*, 431 F.3d 517, 534 (6th Cir. 2005)).

In his objection, Herring argues that Ohio's reasonable-doubt definition "has been condemned by the United States Supreme Court and the majority of federal circuit courts" (Doc. 17 at 6). For this sweeping proposition, he cites only one case, *Holland v. United States*, 348 U.S. 121 (1954), in which the Supreme Court analyzed jury instructions with similar "willing to act" language and held, contrary to Herring's assertion, that "the instructions correctly conveyed the concept of reasonable doubt to the jury." *Id.* at 140. Counsel cannot be ineffective for failing to raise a meritless issue. *Krist v. Foltz*, 804 F.2d 944, 946–47 (6th Cir. 1986). This objection is overruled.

### **Objection 3: Merits Determinations**

#### **Sub-objection 1: Ground 1**

"The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged . . . ." *United States v. Gaudin*, 515 U.S. 506, 511 (1995). *See also In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). Where an instruction is claimed to be "ambiguous and therefore subject to an erroneous interpretation," the court must inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction" incorrectly. *Boyde v. California*, 494 U.S. 370, 380 (1990).

In Ohio, for a jury to convict a defendant of complicity, the jury must find that the defendant shared the same criminal intent as the principal. *See State v. Johnson*, 93 Ohio St. 3d 240, 245 (2001). At Herring's trial, the court instructed the jury that it could not convict Herring of complicity to commit aggravated murder unless it found, beyond a reasonable doubt, that he "specifically intended to aid and abet another in causing the death of" each victim. *Herring I*, 94 Ohio St. 3d at 249. The

court defined the terms aid and abet as follows: "Aid means to help, assist or strengthen. Abet means to encourage, counsel, incite or assist." *Id.* (citation omitted). Herring contends these instructions did not sufficiently inform the jury that it could not convict Herring for complicity to commit aggravated murder unless it found that he specifically intended to kill. *Id.*

On direct appeal, the Ohio Supreme Court disagreed. The court stated that "[i]t is hard to see how a person could, in the words of the instruction, *intend* to 'help, assist, or strengthen' or 'encourage, counsel, incite, or assist' another person in causing death, without also intending that the victim die." *Id.* at 250. The court held that the instructions did not violate due process because the instructions were "functionally equivalent to an instruction requiring specific intent to cause death." *Id.* at 250. The R&R determined that the state-court decision was neither contrary to nor involved an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1) (Doc. 13 at 30).

Herring first objects to the R&R reliance on the Ohio Supreme Court reasoning. He asserts that "it is easy to see how a person could intend to aid and abet in the commission of a felony-murder, yet not intend the victim(s) to die" (Doc. 17 at 7–8). But the jury instructions did not use Herring's phrasing; they instead instructed the jury that, to be found guilty of each count, Herring needed to have "specifically intended to aid and abet another *in causing the death of*" each victim. *Herring I*, 94 Ohio St. 3d at 249 (emphasis added). With this language in mind, the Ohio Supreme Court could not find "any reasonable likelihood that the jury would understand the instruction as allowing the conviction of a defendant who did *not* intend that the victim die." *Id.* at 250. That reasoning neither is contrary to nor involves an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1).

Herring next argues the Magistrate Judge overlooked his argument comparing his case to *Patterson v. Haskins*, 316 F.3d 596 (6th Cir. 2003) (Doc. 17 at 8). In *Patterson*, the petitioner sought

13

federal habeas relief following his conviction in Ohio state court for involuntary manslaughter based on child endangering because the jury instruction for that charge omitted an essential element -- proximate causation -- of the offense. 316 F.3d at 606–07. The Ohio Court of Appeals concluded the jury instruction was "'sufficiently detailed,' because the trial court had correctly instructed the jury as to all of the elements of two other crimes with which Patterson was charged." *Id.* at 609. The Sixth Circuit held that the Ohio court's "sufficiently detailed" standard amounted to a rule that was contrary to clearly established federal law and granted Patterson's habeas petition. *Id.* at 609, 611.

But there are several distinctions between *Patterson* and Herring's case. First, there is a factual distinction regarding the instructions' contents. In *Patterson*, the relevant jury instruction completely omitted the essential element. 316 F.3d at 607. Here, by contrast, Herring complains that the instruction for aiding and abetting "misstated" the intent element (Doc. 17 at 8–9). Second, there is a legal distinction regarding what the state courts held. In *Patterson*, the Ohio court said the instruction was "sufficiently detailed," 316 F.3d at 608, a standard which does not indicate whether the jury found Patterson guilty of each element of the crime. Here, by contrast, the Ohio court determined that the allegedly misstated instruction was "functionally equivalent" to the correct instruction. *Herring I*, 94 Ohio St. 3d at 250. Accordingly, the court determined there was no "reasonable likelihood that the jury has applied the challenged instruction" incorrectly. *Id.* (quoting *Boyde*, 494 U.S. at 380). That determination is neither contrary to nor involved an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). Herring's "right to demand that a jury find him guilty of all the elements of the crime with which he is charged," *Gaudin*, 515 U.S. at 511, is satisfied by an instruction that provides the functional equivalent of a required element. This sub-objection is overruled.

14

**Sub-objections 2–5: Grounds 2, 3(A), 3(B), 3(C), 3(D), 4(A), and 5**

Herring's objections to the R&R determinations on the merits of the remaining grounds are not specific. Rather than pinpointing clearly erroneous findings or conclusions, he repeats arguments that the Magistrate Judge previously considered and properly rejected.

For Ground 2, Herring states that he "disagrees with the Magistrate Judge's narrow reading and application of the federal case law cited in the Traverse" (Doc. 17 at 9). But the Magistrate Judge fully considered Herring's expansive interpretation of *Mattox v. United* States, 146 U.S. 140 (1892) and *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 862 (2017), and rejected it based on established Supreme Court and Sixth Circuit precedent (Doc. 13 at 30–35). Herring points to no argument the Magistrate Judge did not consider.

Similarly, for the other grounds, Herring rehashes arguments the Magistrate Judge considered and properly rejected. After considering Herring's general objections, this Court finds no clear error in the R&R determinations. *Dolgencorp, LLC*, 277 F. Supp. 3d at 965. These sub-objections are overruled.

**Certificate of Appealability**

Herring requests a certificate of appealability (Doc. 17 at 16). To obtain a certificate, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. A certificate "does not require a showing that the appeal will succeed." *Id.* at 337. Rather, a

petitioner must demonstrate only "that reasonable jurists would find the district court's assessment of the constitutional claims debatable." *Id.* at 338.

Herring meets this burden on Ground 1 and Ground 3(A)(1). For Ground 1, although this Court concludes that the Ohio Supreme Court's functional-equivalence determination is neither contrary to nor an unreasonable application of *Gaudin*, 515 U.S. at 511, reasonable jurists could debate that conclusion. Ground 3(A)(1) is an ineffective-assistance-of-trial-counsel claim related to the failure to object to Ground 1, and thus may be appealed with Ground 1. These issues deserve encouragement to proceed further, and this Court therefore grants a certificate of appealability as to these grounds. This Court certifies that there is no basis upon which to issue a certificate of appealability as to the other grounds. 28 U.S.C. § 2253(c).

## CONCLUSION

This Court overrules Herring's Objections (Doc. 17) and adopts the R&R (Doc. 13) in its entirety. Accordingly, the Petition (Doc. 1) is dismissed. This Court grants a certificate of appealability for Grounds 1 and 3(A)(1) of the Petition and denies a certificate of appealability for Herring's other grounds for relief. 28 U.S.C. § 2253(c).

IT IS SO ORDERED.

                                                     s/ *Jack Zouhary*
                                                    JACK ZOUHARY
                                                    U. S. DISTRICT JUDGE

                                                    June 12, 2019